# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE RIECO, | : | |
| | : | Civil No. 4:12-CV-2032 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WILLIAM HEBE, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

In this *pro se* prisoner civil rights lawsuit, the plaintiff, Dwayne Rieco, a convicted felon, seeks to set aside a state court child custody order, gain visitation rights to his child in prison over the child's mother's objections, and receive millions of dollars in damages from the child care officials who successfully petitioned the state courts for the termination of Rieco's parental rights.  This matter now comes before the Court on a motion for summary judgment filed by two of these child care officials, Jenny Farrer and Michele Rigalbuto, caseworkers for the Tioga County Department of Human Services.  (Doc. 19)  For the reasons set forth below, it is recommended that this motion be granted, and Rieco's complaint be dismissed as to these defendants.  In addition, upon a supplemental screening review it is recommended that Rieco's complaint also be dismissed with respect to defendant

William Hebe, the attorney who represented in Tioga County Department of Human Services in this state child custody case.

## II.    <u>Statement of Facts and of the Case</u>

The pertinent facts in this case can be simply stated:  the plaintiff, Dwayne Rieco, is a convicted felon and state prisoner who is currently serving a state prison sentence.[1]  At the time of his conviction Rieco was the biological father of, TG,  a boy who is now a teenager.  (Doc. 21, ¶1)  While he had this biological relationship with TG, Rieco otherwise has had no relationship, whatsoever, with his son since the time of the child's birth, and has never contributed any monies toward his support.  (<u>Id</u>., ¶2) Instead, TG's care and custody over the years has been a shared responsibility of the Tioga County Department of Human Services ("TCDHS"), and TG's natural mother, who has always maintained a relationship with her son.  (<u>Id</u>., ¶3)

Despite his lack of any on-going relationship with TG, beginning in 2010 Rieco sought from prison to have letters delivered to TG, and demanded that TG be brought to prison for visits.  (<u>Id</u>., ¶¶4-5)  TG's natural mother strenuously objected to any contact between her child and Rieco, a convicted sex offender.  (<u>Id</u>., ¶6)  Defendants

---

[1]While the parties do not identify the precise nature of Rieco's conviction, state court records indicate that Rieco was convicted in the Court of Common Pleas of Bucks County in 2008 of rape, indecent assault, and assault charges and was sentenced to 10 to 20 years imprisonment.  <u>Commonwealth v. Rieco</u>, CP-09-CR-0006346-2007.

Farrer and Rigalbuto, caseworkers for the Tioga County Department of Human Services, also agreed that this contact between Rieco and TG would be detrimental to the child. (Id., ¶7) Accordingly, Rigalbuto and Farrer refused to bring the child to Rieco in prison and declined to deliver his letters to TG. Rather, Farrer and Rigalbuto, acting on behalf of the Tioga County Department of Human Services, through agency counsel William Hebe, Esq., caused a Petition to Terminate Parental Rights to be filed in the Court of Common Pleas of Tioga County. (Id., ¶8) This Petition to Terminate Parental Rights was granted by orders of President Judge Robert E. Dalton, Jr., of the Tioga County Court of Common Pleas entered on January 18 and February 10, 2011. (Doc. 20, Exs. A-B) These state court orders remain in effect to this day. Rieco has never set aside, modified or reversed these outstanding court orders. (Doc. 21, ¶10)

It is against the background of these undisputed facts that defendants Farrer and Rigalbuto seek dismissal of Rieco's complaint, which seeks to hold the defendants personally liable for $2,500,000 in damages as a result of the action they took on behalf of TG with the approval of the state courts. For the reasons set forth below, it is recommended that summary judgment be entered in favor of these defendants.

## II.    Discussion

## A.    Rule 56–The Legal Standard

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P., Rule 56 (a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple Univ.</u>, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. <u>See</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the

"conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); <u>Iseley v. Beard</u>, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

> **B.** **The Rooker-Feldman Doctrine Prevents Rieco from Re-litigating These Child Custody Claims Which He Lost in State Court**

In this case, Rieco's claims fail as a matter of law on these undisputed facts for several reasons. At the outset, the Rooker-Feldman doctrine applies here and bars further consideration of this matter, which arises out of a state domestic relations-child custody case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Rieco, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal

district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions."  Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication."  Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in the particular field, Rieco's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed. <u>Kwasnik v. Leblon</u>, 228 F. App'x 238, 242 (3d Cir. 2007).

## C. <u>Rieco's Claims Fail on Their Merits and the Defendants are Entitled to Qualified Immunity</u>

Furthermore, Rieco's complaint fails on its merits. At bottom, Rieco seeks to impose upon third parties an obligation to conduct visitations with his biological child, TG, in prison. Rieco demands this right despite his lack of any meaningful relationship with the child, over the objections of TG's mother, and in the face of clinical assertions by caseworkers that such compelled visitation would be injurious to TG.

This he cannot do. Rieco enjoys no such untrammeled rights to compel third party visits in prison with the persons of his choosing. Quite the contrary, as a general rule it is it is well-settled that officials may limit the nature of prison inmate visitation <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 759-60 (3d Cir. 1979). Thus, prison contact visitation restrictions have long been upheld by the courts as a

constitutional response to valid security concerns.  See, e.g., Dunn v. Castro, 621 F.3d 1196, 1203 n. 2 (9th Cir. 2010);  Mayo v. Lane, 867 F. 2d 374, 375-376 (7 Cir. 1989); Thorne v. Jones, 765 F.2d 1270, 1273-75 (5th Cir.1985) (holding prisoner had no absolute right to visits from his parents); Harmon v. Auger, 768 F.2d 270, 272 (8th Cir.1985) (holding that an inmate does not have a liberty interest in contact visits); Smith v. Coughlin, 748 F.2d 783, 788-89 (2d Cir.1984) (upholding prison regulation that prohibited contact visits from family); Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.1984) (upholding the termination of family visits as a result of prison regulation violations); Ramos v. Lamm, 639 F.2d 559, 570 n. 26 (10th Cir.1980) ("[W]e think the weight of present authority clearly establishes that there is no constitutional right to contact visitation.  We agree with this view." (internal citations omitted)); Africa v. Vaughn, 1996 U.S. Dist. LEXIS 1622, No. CIV.A. 96-0649, 1996 WL 65445, at *1 (E.D. Pa. Feb. 14, 1996); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d. Cir. 1992).  As we have observed:

> [I]t is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and spouses. See, e.g., Young v. Vaughn, No. 98-C4630, 2000 WL 1056444, at *3, 2000 U.S. Dist. LEXIS 10667, at *8 (E.D.Pa. July 1, 2000) (holding that "there is no constitutionally protected right to prison visitation"); Flanagan v. Shively, 783 F.Supp. 922, 934 (M.D.Pa.1992) ( "Inmates have no constitutional right to visitation ... Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion."); Young v. Vaughn, No. 98-C4630, 2000 WL 1056444, at *2, 2000 U.S. Dist. LEXIS 10667, at *5 (E.D.Pa. July 31, 2000) ("Convicted prisoners, their family and

spouses have no constitutional right to visitation."); *Africa v. Vaughn,*
No. 96-C0649, 1996 WL 65445, 1996 U.S. Dist. LEXIS 1622, at *1
(E.D.Pa. Feb. 14, 1996) ("Neither convicted prisoners nor their family
members have an inherent constitutional right to visitation.").
Additionally, there are no Pennsylvania regulations expressly mandating
a right to prison visitation. See Africa v. Vaughn, 1996 WL 65445, at *1,
1996 U.S. Dist. LEXIS 1622, at *4

Neumeyer v. Beard, 301 F. Supp. 2d 349, 351-52 (M.D. Pa. 2004) aff'd, 421 F.3d 210
(3d Cir. 2005).

Similarly, it is clear that prison officials can curtail the right of inmates to
correspond with minor children, particularly when that inmate–like Rieco– has been
convicted of violent predatory crimes, and the child's mother and custodial care-givers
object to the prisoner's efforts to communicate with the child.  In such instances,
courts have upheld the refusal of officials to deliver inmate mail to children as
rational, reasonable limitations on inmate correspondence.  See Samford v. Dretke,
562 F.3d 674 (5th Cir. 2009).  In light of this settled caselaw, Rieco's efforts to insist
that officials to compel visits and correspondence between this inmate and TG fail as
a matter of law.

But even if Rieco had stated a colorable constitutional claim relating to
visitation and correspondence with TG, the defendants would still be entitled to
qualified immunity from these claims for damages.  In order to establish a civil rights
claim Rieco must show the deprivation of a right secured by the United States
Constitution or the laws of the United States. +Satisfying these elements alone,

however, does not guarantee that Rieco is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and

award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this specific factual context the defendants terminated Rieco's parental rights with the express approval of state courts. Moreover, in declining to permit visitation or correspondence between Rieco and TG officials acted in a manner which had been approved by courts in the past, courts which have long recognized the validity of restrictions on inmate visitation and outgoing correspondence. See, e.g., Samford v. Dretke, 562 F.3d 674 (5th Cir. 2009); Neumeyer v. Beard, 301 F. Supp. 2d 349, 351-52

(M.D. Pa. 2004) aff'd, 421 F.3d 210 (3d Cir. 2005). Given this pre-existing caselaw, which plainly rejected claims similar to those advanced here by Rieco, nothing could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, the defendants are entitled to qualified immunity from damages.

### D.    Defendant Hebe Should Also Be Dismissed From This Action

Further, we note that Rieco has named the Human Services attorney, William Hebe, as a defendant in this action but has not yet successfully served Hebe. In the absence of service, or an appearance on behalf of Hebe, our ongoing responsibility to screen prisoner *pro se* complaints leads us to conclude that defendant Hebe, the attorney for the Tioga County Department of Human Services who filed this petition to terminate parental rights, should also be dismissed from this action.

This Court has a continuing statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which  seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In this case when considering the viability of Rieco's constitutional claims against Mr. Hebe, a private attorney whose clients include the Tioga County Department of Human Services, it is well-established that the federal civil rights statute, 42 U.S.C. § 1983, does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1)* whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs who may invite the courts to consider lawsuits against private attorneys. With respect to this state action requirement, it is well-settled that the conduct of an attorney, representing a client in a case, does not by itself rise to the level of state action entitling a state prisoner to bring a federal civil rights actions against private counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). As we have previously noted: "Private attorneys and public defenders are generally not considered state actors for § 1983 purposes when acting in their capacities as attorneys. See Angelico, 184 F.3d at 277 (citing Polk County v. Dobson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)) ('[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.')." Catanzaro v. Collins,

CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011). Therefore, in the absence of some further well-pleaded facts, Rieco simply may not convert his dissatisfaction with the outcome of this state litigation into a federal civil rights lawsuit against the private attorney who filed this state lawsuit and this defendant should be dismissed from this action.[2]

_____

[2]We note that Rieco has also sued another attorney, Lenore Urbano, who apparently served as a guardian ad litem in this matter. Defendant Urbano has filed an answer in this lawsuit, but has not to date taken any other action to defend this case. It may be that defendant Urbano is also entitled to dismissal of this action since: " A guardian ad litem is a person appointed by the court in custody proceedings to serve as an investigator and gather information about the parents and the children and report back to the court recommending which parent should receive custody. See Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir.1989) ("A GAL typically gathers information, prepares a report and makes a recommendation to the court regarding a custody disposition."); Raven C. Lidman, The Guardian Ad Litem in Child Custody Cases: The Contours of Our Judicial System Stretched Beyond Recognition, 6 Geo.Mason L.Rev. 256 (1998) (same). Characterized as "agents" of the court, Cok, 876 F.2d at 2–3, and "actual functionar[ies] or arm[s] of the court," guardian ad litems aid and inform the court. Gardner v. Parson, 874 F.2d 131, 146 (3d Cir.1989) ("[a] guardian ad litem would be immune in exercising such functions as ... making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court."). Because of this intimate relationship to the court and the judicial process, several courts have held that when performing certain delegated duties, guardian ad litems are entitled to absolute judicial immunity. See Gardner, 874 F.2d at 145; Cok, 876 F.2d at 2–3; see also Myers v. Morris, 810 F.2d 1437 (8th Cir.1987), rev'd on different grounds, Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)." Hughes v. Long, 242 F.3d 121, 127 (3d Cir. 2001). It is recommended, however, that since Urbano has entered an appearance and filed an answer in this matter that the court refrain from a further screening analysis of this claim at this time.

## IV.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment (Doc. 19), be GRANTED, and upon a further screening review, IT IS ALSO RECOMMENDED that plaintiff's complaint be DISMISSED as to defendant Hebe, who has not yet been served.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of October 2013.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge